## THE SHAFER IRON COMPANY (A FOREIGN CORPORATION) v. JOHN W. STONE, CIRCUIT JUDGE OF IRON COUNTY.

*Garnishment—Foreign corporations—Service of process—Personal examination of officers.*

1. How. Stat. § 8086, as amended by Act No. 266, Laws of 1889, authorizing the service of a writ of garnishment upon any officer or agent of a foreign corporation found within this State, is not confined to a *general* agent of the corporation.

   So *held*, where service was made upon the resident agent of a mining company, whose duties consisted in acting as custodian of the corporate property in the county where its mining operations were carried on, and inspecting the work of its contractors in said county; which service is sustained.

2. How. Stat. § 8061, requiring a garnishee to appear before a circuit judge or circuit court commissioner and submit to a personal examination touching his liability as garnishee, does not apply to a foreign corporation, when summoned as garnishee.

3. A circuit judge has no power to order any or all of the officers of a foreign corporation, against which garnishment proceedings are pending, to appear and bring before him the books and papers of the corporation, and submit to an examination on oath concerning its liability as such garnishee.

*Mandamus.* Submitted November 5, 1891. Granted in part November 20, 1891.

Relator applied for *mandamus* to compel respondent to quash a writ of garnishment, and to set aside an order for the examination of its officers, agents, etc., before the respondent touching its liability as garnishee. The facts are stated in the opinion.

*E. E. Osborn,* for relator.

*R. C. Flannigan,* for respondent.

PER CURIAM. August 3, 1891, a writ of garnishment was issued against the petitioner in a suit in the circuit court for Iron county, in which John Corcoran and James F. Corcoran were plaintiffs, and Edward P. Jennings defendant. The affidavit upon which the writ was issued states that Jennings was indebted to the plaintiffs in the sum of $5,672.64 over and above all legal set-offs, and that the debt was then due. The affidavit further states that the affiant—

"Has good reason to believe and does believe that the Shafer Iron Company, a foreign corporation under the laws of the state of Illinois, now engaged in and carrying on the business of iron mining in said county of Iron, has property, money, goods, chattels, credits, and effects in its hands and under its custody and control belonging to the said Edward P. Jennings, the said defendant, and that the said Shafer Iron Company is indebted to the said Edward P. Jennings."

The writ of garnishment was placed in the hands of the sheriff of that county, who returned that he had served it upon said petitioner on the 3d day of August, 1891, by delivering a copy thereof to Thomas B. Biggers, the agent of the Shafer Iron Company having charge of its business in this State.

On August 29, 1891, the Shafer Iron Company prepared and caused to be filed with the clerk of that county two disclosures under oath; one made by its president, denying the jurisdiction of the court to require such disclosure, and answering that said company had no property, money, goods, chattels, credits, or effects in its hands or under its custody and control belonging to the defendant, and that it was not indebted to the defendant in any amount whatever. The other disclosure was made by Mr. Biggers, who stated therein that he was the agent of the Shafer Iron Company, residing in the village of

Crystal Falls, in said county of Iron, and that his duties as such had always consisted and then consisted in acting as custodian of the property of the company in the county of Iron, and inspecting the work of mining carried on by contractors in the mines of the company in that county, and that he had not had, and did not then have, any other duties or powers in connection with the affairs of the company; and that he had no personal knowledge whatever with reference to the dealings between the company and the defendant, but that he was informed that the company had no property, money, goods, chattels, credits, or effects in its hands or under its custody or control belonging to the defendant, and that it was not indebted to the defendant in any amount whatever.

The disclosures were filed and copies served upon plaintiffs' attorney, who on September 7, 1891, filed a demand for an examination of the company and of its officers, agents, and book-keepers on oath concerning all matters of liability of the company to the defendant before the circuit judge of that county, and also gave notice of the demand, and that the company, its officers, agents, and book-keepers having knowledge concerning said liability, were required to appear before the circuit judge at chambers in the city of Marquette, September 14, 1891, at 2 o'clock in the afternoon, to submit to such examination on oath. These notices were served upon Mr. Biggers, and also upon Mr. Osborn, who had appeared as attorney for the company.

October 7, 1891, the circuit judge made an order, in which, after reciting the proceedings hereinbefore stated, and that the petitioner had failed to produce said officers and agents before him under said notice, it was ordered that the company produce said officers before the circuit judge at chambers, at the city of Marquette, on January

4, 1892, for examination on oath concerning all matters of the liability of the company as such garnishee; and if, to the knowledge of the company, the matters concerning its liability as such garnishee were partly within the knowledge of one of its officers or one of its agents, and partly within the knowledge of another or other of its officers and agents, then that it produce at the time and place aforesaid, for examination on oath, such of its officers or agents as severally had knowledge concerning the matters of the liability of the company as such garnishee.

October 10, 1891, the company moved the circuit court for the county of Iron, then sitting, to set aside the service of the writ of garnishment, quash the same, and vacate all the proceedings therein; also to vacate and set aside the order made by the circuit judge requiring the company to produce its officers and agents before him on January 4, 1892. This motion came on to be heard, and was denied by that court.

The defendant company files its petition in this Court setting forth the above facts, and asks a *mandamus* to compel the circuit court to quash the writ of garnishment, and to set aside its order for examination of its officers, agents, etc., made October 7, 1891. The order to show cause was issued, to which the circuit judge makes return to this Court that the facts set out in the petition are substantially as stated.

The claim made by the counsel for relator is that the writ should be quashed for the reason that Biggers, upon whom the writ was served, was not such an agent of the company as is contemplated by the statute, upon whom process of garnishment might be served where a corporation was a non-resident of the State. By section 8086, How. Stat., as amended (Act No. 266, Laws of 1889), it is provided:

"Any corporation, domestic or foreign, other than municipal, may be garnished under this act. If domestic, the writ of garnishment may be served upon the president, secretary, cashier, or treasurer, superintendent, or general agent, or such other officer as the corporation may appoint or the court direct; and the officer served, and such other officer as the court or commissioner may order by rule or citation, as hereinbefore provided for, shall make disclosure, and the same shall be considered the answer of the corporation. If a foreign corporation, the writ of garnishment may be served upon any officer or agent of the corporation, upon the conductor of any railroad train, or upon the master of any vessel belonging to and in service of the corporation, found within this State, whether said officer or agent be in this State upon the business of said corporation or not; and said officer or agent shall make disclosure, and the same shall be considered the answer of the corporation."

The contention of counsel for relator is that the provision of the statute relative to service upon foreign corporations should be considered as applying only to a general agent or officer, cognizant of its affairs and competent to make disclosure on its behalf, and could not be applied to any other than a general agent of the company; that the Legislature could not have intended such an injustice as to place the company at the mercy of a disaffected or careless employé, who in no sense represented the company so as to contract on its behalf, or require of an agent who knew nothing of the matter the impossibility of making a disclosure. Counsel says that, the Legislature having limited by the act the authority to make service upon a domestic corporation to its principal officers or general agent, it is evident the Legislature intended to place foreign corporations on the same footing, and to limit the service of garnishee process also to general agents.

We know of no such rule of construction. From the fact that the service can only be made, in case the cor-

poration is a domestic one, upon its principal officers and general agent, and there is no such limitation applying in case the corporation is a foreign one, it is evident that the Legislature intended not to limit the service to the general agent of foreign corporations, and it may have been for a very good reason. In the case of a domestic corporation, its principal office is located within the State, and its principal officers are generally residents of the State. Its principal business is carried on here, requiring the presence of its general manager, its superintendent, and its general officers, and process may be readily served within the State upon its officers, superintendent, and general manager. In the case of a foreign corporation, however, its principal business may be carried on outside of the State. Its general office may be located outside the State, and its principal officers and its general manager may not be found within the State; and the Legislature has therefore determined by the act that the garnishee process may be served upon any officer or agent of the corporation within the State, whether said officer or agent be in this State upon the business of said corporation or not, and that such officer or agent shall make disclosure, and the disclosure shall be considered the answer of the corporation itself. There is no more hardship in this than in the provision contained in the same statute as to the service of process upon railroad companies by the service upon a conductor of a train. From the sworn disclosure made by Mr. Biggers it is apparent that he was as well conversant with the affairs of that corporation as could any railroad conductor be with the affairs of a railroad corporation. It must therefore be held that the service upon Mr. Biggers, as agent of the corporation, was a proper service.

The claim is made by counsel for relator that this part of the statute of 1889, relative to service upon foreign

corporations, is in conflict with the fourteenth amendment to the Constitution of the United States, that "no state shall deny to any person within its jurisdiction the equal protection of the laws." We cannot agree with the learned counsel. When a foreign corporation comes within this State, and seeks to carry on its business here, it must do so in compliance with our laws. A corporation created by a state is a mere creation of local law. It has been repeatedly held, and there seems to be no conflict of authority, that corporations of one state have no right to exercise their franchises in any other state except by the consent of such other state.

The other question raised upon this record—whether a circuit judge or circuit court commissioner can order any or all of the officers of a foreign corporation to appear and bring before him the books and papers of the corporation, and submit to an examination on oath concerning all matters of the liability of the corporation as such garnishee—is a very important one, and calls for careful consideration. The corporation, and not the officers, is the garnishee; and, ordinarily, an agent cannot be compelled to make disclosure unless required by some positive provision of law. The only provision requiring an officer or agent of a foreign corporation to make disclosure is found in Act No. 266, above quoted. There is no provision requiring such officer or agent to appear and submit to examination required of a garnishee under section 8061, How. Stat. That section says the garnishee shall appear. It contemplates a personal examination, and cannot be construed to extend to the garnishee's agents. It provides that the testimony or statement made on such personal examination shall be reduced to writing by the judge and signed by the garnishee, and the judge shall report and file the same with the clerk of that county. If he does not appear and submit to such examination,

as required by the order, his default may be taken for want of appearance and submission to such examination, and the default made absolute, as in other personal actions, and the case proceed to judgment against the principal defendant; whereupon judgment may be rendered and execution issued against such garnishee.

It is manifest that this section of the statute cannot apply to foreign corporations, because proceedings against foreign corporations are regulated by section 8086 of Howell's Annotated Statutes. This section, as amended by Act No. 266, Laws of 1889, is the only statute which authorizes proceedings against corporations by garnishment, either domestic or foreign. This section does authorize the writ to be—

" Served upon the president, secretary, cashier, or treasurer, superintendent, or general agent, or such other officer as the corporation may appoint or the court direct; and the officer served, and such other officer as the court or commissioner may order by rule or citation, as hereinbefore provided for, shall make disclosure, and the same shall be considered the answer of the corporation."

But no such provision is found with reference to foreign corporations. It provides, as above stated, for service upon any officer or agent, and that such officer or agent shall make disclosure, which shall be considered the answer of the corporation; and then, instead of providing that the court may order a disclosure, it is enacted, under a proviso,—

" That in all such cases of foreign corporations, if said officer or agent shall neglect or refuse to file disclosure to said writ, as hereinbefore in this chapter provided, the default of said foreign corporation may be entered as in other cases, and upon the entry of judgment against the principal defendant judgment may be entered in said garnishee proceedings against said foreign corporation for the amount thereof, including costs."

And it is further provided that—

"No judgment on default shall be rendered against said foreign corporation until the expiration of 60 days after the entry of judgment against the principal defendant, and the plaintiff shall, within 20 days after judgment against the principal defendant, serve notice by mail on the foreign corporation at its home office that judgment has been obtained against the principal defendant, and that at the expiration of 60 days from the date of said judgment application would be made for judgment against it, as hereinbefore provided."

This shows that the Legislature intended to deal with foreign corporations on a different basis than with either domestic corporations or natural persons. These provisions are intended to take the place of a personal examination, leaving the plaintiff at liberty to proceed to file interrogatories or to take issue upon the disclosure.

It could never have been the intention of the Legislature to compel all the officers of a corporation to attend in person, and produce their books and papers, from a distant state, for the examination and inspection of any person who might allege upon information and belief that it was in some way or manner indebted to his debtor. If they can be required to attend from Illinois, they can be from Washington or California, at the peril of having a judgment taken against them if they fail to obey the order. The statute does not authorize the court to make any such order, and therefore the authority does not exist.

The *mandamus* must be issued directing the circuit judge to vacate so much of said order as commands the attendance of the officers and agents and the production of their books on January 4, 1892.